## PETITION OF JULIA HANKINS

(125 N.W.2d 839)

(File No. 10076.  Opinion filed January 30, 1964)

436

**Frank L. Farrar,** Atty. Gen., **Alan Williamson,** Asst. Atty. Gen., Pierre, **Allen G. Wilson,** State's Atty., Hot Springs, for Appellant.

**Hanley, Costello & Porter, Dennis H. Hill,** Rapid City, for Petitioner and Respondent.

RENTTO, J.   Julia Hankins was arrested by a South Dakota Highway patrolman and charged with having committed the crime of drunken driving on an Indian Reservation on August 4, 1962 in violation of the statutes of South Dakota. On process duly issued by a Justice of the Peace she was imprisoned. The same day she petitioned the circuit court for a writ of habeas corpus which was issued. Pending a hearing thereon she was admitted to bail and released on her own recognizance without bond. She claimed the state lacked jurisdiction to proceed against her.

At the hearing on the writ it was stipulated that the act for which she was arrested occurred on U. S. Highway No. 18 at a place thereon which was within the closed portion of the Pine Ridge Indian Reservation. It was also agreed that at the time of committing the offense charged she was a duly enrolled member in good standing of the Oglala Sioux Tribe and a resident of the Pine Ridge Indian Reservation. The state's claim of jurisdiction is bottomed solely on Ch. 464 of the Laws of 1961. The trial court held this act ineffective and invalid to confer any jurisdiction upon the State of South Dakota and discharged the petitioner from custody. The state appeals.

The act relied on by the state provides as follows:

"Section 1. The State of South Dakota, in accordance with the provisions of 67 Statutes at Large, page 589 (Public Law 280), hereby assumes and accepts jurisdiction of all criminal offenses and civil causes of action arising in the Indian Country located within this State, as Indian Country is defined by Title 18 United States Code Annotated, section 1151, and obligates and binds this State to the assumption thereof, the provisions of Chapter 106 of the Session Laws of the State of South Dakota for 1901, as amended, or any other law of this State to the contrary, notwithstanding.

"Section 2. The county commissioners of those counties of this State in which there is located Indian Country as affected by this Act, and the State Board of Finance shall be, and they are hereby authorized to accept grants-in-aid, and to negotiate, and contract with the Federal Bureau of Indian Affairs of the United States Department of Interior for reimbursement of any authorized and appropriated federal funds for the added costs to such counties and this State in connection with such assumption of jurisdiction.

"Section 3. That SDC 1960 Supp., sections 65.0805, 65.0806, 65.0807, 65.0808, 65.0809, and 65.0810 be, and the same are, hereby repealed.

"Section 4. Except as to criminal offenses and civil causes of action arising on any highways, as the term is defined in SDC 28.0101, the jurisdiction provided for in Section 1 herein shall not be deemed assumed or accepted by this State, and Sections 1 and 3 of this Act shall not be considered in effect, unless and until the Governor of the State of South Dakota, if satisfied that the United States of America has made proper provision for the reimbursement to this State and its counties for the added costs in .connection with the assumption of said jurisdiction, has issued his proper proclamation duly filed with the Secretary of State declaring the said jurisdiction to be assumed and accepted."

Since the Governor has not issued the proclamation required by Section 4 of the act we are here concerned only with the assumption of jurisdiction as to criminal offenses arising on any highways in Indian Country. In passing it should be noted that Ch. 464 was amended by Ch. 467 of the Laws of 1963 by which the state assumed unrestricted jurisdiction in Indian country. However, the operation of this later act has been suspended by the filing of a referendum petition.

In the Act of February 22, 1889, Ch. 180, 25 Stat. 676, the Congress provided for the admission of the states of South Dakota, North Dakota, Montana and Washington into the Union. Pertinent to our inquiry that enactment provided: "Second. That the people inhabiting said proposed States do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States; *   *   *"

Responding to this enabling legislation the Constitution which we adopted in Art. XXII included a compact with the United States. The portion thereof here material, is as follows: "Second. That we, the people inhabiting the state of South Dakota, do agree and declare that we forever disclaim all right and title to the unappropriated public lands lying within the boundary of South Dakota, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States; and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States; *   *   *" See also Art. XXVI, Sec. 18. The Enabling Act stipulated that the Ordinance adopted by our convention was to be irrevocable without consent of the United States and the people of this state. Our compact in turn provided that the consent of the people of South Dakota to its revocation could be expressed by our legislature.

Departing from the policy which deprived the State of South Dakota and other states of jurisdiction over the Indian lands within their boundaries, the Congress adopted the Act of August 15, 1953, being Public Law 280, Ch. 505, 67 Stat. 588. Material here are these portions of the act.

> "Sec. 6. Notwithstanding the provisions of any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitutions or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this Act: **Provided,** That the provisions of this Act shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their state constitution or statutes as the case may be.

> "Sec. 7. The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to the assumption thereof."

These sections were considered at some length In re High Pine's Petition, 78 S.D. 121, 99 N.W.2d 38. Prior sections of the act concern the states to which immediate jurisdiction was relinquished.

The ultimate question here involved is whether under this Congressional enactment assumption of jurisdiction over offenses committed on highways in Indian country, as is attempted by Ch. 464 of the Laws of 1961, is permissible." The state's position that such is proper is bottomed on the language in Section 7 of Public Law 280 which permits the states to assume this jurisdiction "at such time and in such manner" as the state shall obligate and bind itself to assumption thereof. Petitioner's answer to this is that the Congress intended Section 6, and not Section 7, to apply to South Dakota. We share the latter view.

When Public Law 280 was adopted separate bills were pending in the Congress to transfer Indian jurisdiction to the states of California, Minnesota, Nebraska, Oregon and Wisconsin. The enactment which eventually became Public Law 280 resulted from hearings held on these separate bills. From House Report 848, which was also Senate Report 699, see U. S. Code, Congressional and Administrative News, 83rd Congress, First Session 1953, Vol. 2, pp. 2409-2414, we quote the following:

"Your committee has amended the printed bill by adopting substitute language which operates to—

"(1) confer as of date of enactment, civil and criminal jurisdiction on the States of California, Minnesota, Nebraska, Oregon, and Wisconsin, excepting specified areas within three of these States as hereinafter noted.

"In the foregoing States the Indian Bureau advised State and local authorities who indicated their willingness to accept the proposed transfer of jurisdiction. Indian groups in those States were, for the most part, agreeable to the transfer of jurisdiction, with certain groups opposing such transfer. The following tribes, each of which has a tribal law and order organization functioning in a reasonably satisfactory manner, have advised Bureau officials of their objections to State jurisdiction, and their reservation areas have therefore been excepted in the transfer legislation; Red Lake Band of Chippewa Indians of Minnesota, Warm Springs Tribe of Oregon, and the Menominee Tribe of Wisconsin.

"(2) give consent of the United States to those States presently having organic laws expressly disclaiming jurisdiction to acquire jurisdiction subsequent to enactment by amending or repealing such disclaimer laws.

"Examination of the Federal statutes and State constitutions has revealed that enabling acts for eight States, and in consequence the constitutions of those States, contain express disclaimers of jurisdiction. Included are

Arizona, Montana, New Mexico, North Dakota, Okla-
homa, South Dakota, Utah, and Washington. Effect of
the disclaimer of jurisdiction over Indian land within the
borders of these States—in the absence of consent be-
ing given for future action to assume jurisdiction—is to
retain exclusive Federal jurisdiction until Indian title in
such lands is extinguished; such States could, under the
bill as reported, proceed to amendment of their respec-
tive organic laws by proper amending procedure.

"(3) give consent to all other States to acquire
jurisdiction over criminal offenses or civil causes
of action at such time and in such manner as by
affirmative legislative action such States may elect
to acquire jurisdiction.

"This provision would operate with respect to Ne-
vada, and other States similarly situated. In Nevada,
authorities of some counties have indicated their will-
ingness to accept jurisdiction, others opposed it, and still
others stated they would accept such jurisdiction only
with an accompanying Federal subsidy. The reported
bill leaves open for such States the door to acquiring
jurisdiction in the future."

It seems clear that Section 6 of the act was intended by the
Congress to apply to South Dakota inasmuch as we are one
of the states having a disclaimer of jurisdiction in our constitu-
tion and the Enabling Act under which we came into the Union
deprives us of such jurisdiction. That is the view of the author
of the comment on "Criminal Jurisdiction over Indian Coun-
try in Arizona." 1 Ariz.L.Rev. 67 at page 87. See also Ander-
son v. Gladden, D.C., 188 F.Supp. 666 at p. 677. Of the states men-
tioned in this section of the act our constitutional disclaimer of
jurisdiction is unique in that it provides for the consent of the
people of South Dakota to its revocation to be "expressed by
their legislative assembly:" Revocation by legislative action un-
der the same Enabling Act was approved in State v. Paul, 53
Wash.2d 789, 337 P.2d 33, appeal dismissed 361 U.S. 898, 80 S.Ct.
203, 4 L.Ed.2d 155, absent express language to that effect in the
Washington Constitution.

The language of Section 6 does not expressly authorize the assumption of jurisdiction in the manner attempted by Ch. 464, Laws of 1961. Nor do we think that such was the intent of Congress. Since a relinquishment of federal power is involved the state's assumption of such jurisdiction, to be effective, must be in a manner that appears from the Federal act to be clearly permissible.

In returning immediate jurisdiction to the five states named in the prior provisions of Public Law 280, the Congress designated the areas involved as all Indian country in the state, excepting in three of the states a named reservation. The title of the act refers to conferring jurisdiction with respect to criminal offenses or civil causes of action committed or arising on an Indian Reservation. Nowhere in the act is it expressly stated that a state could assume jurisdiction over only a portion or part of a reservation.

In defining Indian country in 18 U.S.C.A. § 1151, rights of way running through the reservation are specifically mentioned as being a part of the reservation. We think it reasonable to believe that if the Congress had intended that under Section 6 of Public Law 280, the states could assume jurisdiction over only highways on a reservation, that it would have said so. It is for the Congress and not for us to spell out the manner in which the states may assume the jurisdiction which it relinquished.

The report of the committee considering Public Law 280 stated that the legislation had two co-ordinate aims: "First, withdrawal of Federal responsibility for Indian affairs wherever practicable; and second, termination of the subjection of Indians to Federal laws applicable to Indians as such." These aims were stated thus in Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251: "Congress has followed a policy calculated eventually to make all Indians full-fledged participants in American society. This policy contemplates criminal and civil jurisdiction over Indians by any State ready to assume the burdens that go with it as soon as the educational and economic status of the Indians permits the change without disadvantage to them." Manifest in Ch. 464, Laws 1961, is the legislative recognition that South

Dakota was not "ready to assume the burdens" incident to the assumption of jurisdiction over Indian land.

It seems to üs that this legislation does not tend to accomplish or promote the congressional purposes of Public Law 280. To the contrary, it would proliferate the law enforcement authorities in Indian country by adding the state as another entity with geographically limited jurisdiction where the Federal and Tribal courts already operate, each with limited subject matter jurisdiction. Moreover, it makes inescapable the checkerboard jurisdiction condemned in Seymour v. Superintendent, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346, wherever the extent of the highway right of way is not clear from markings on the ground. This we think would be commonplace on highways in our sparsely settled Indian reservations. While we have serious doubts that those states to which Section 7 applies could assume jurisdiction in this fashion, that question is not here presented.

Affirmed.

All the Judges concur.