SMITH, Appellant v. TEMPLE et al., Respondents

(152 N.W.2d 547)

(File No. 10371.   Opinion filed August 24, 1967)

**Whiting, Lynn, Freiberg & Shultz,** Rapid City, **Martin Farrell,** Hot Springs, for plaintiff and appellant.

**Costello, Porter, Hill, Banks & Nelson,** Rapid City, for defendants and respondents, Douglas Temple and Ward Ellis.

**Norman K. Blatchford,** Hot Springs, for defendant and respondent, Georgianna Temple.

HANSON, Judge.

Plaintiff appealed from orders dismissing his complaint on jurisdictional grounds. After perfecting his appeal plaintiff died and defendants moved for summary affirmance. However, on June 2, 1967, this court allowed Michael V. Smith, as special administrator of the Estate of Ambrose Hunter, to be substituted

as party plaintiff. The order allowing substitution disposed of defendants' pending motion.

The appeal presents the important and perplexing question of whether or not the Circuit Court has jurisdiction of an action by one Indian against other Indians for damages resulting from an automobile accident on a state highway within the territorial limits of an Indian Reservation.

The stipulated facts show the plaintiff, Ambrose Hunter, and defendants, Douglas Temple and Georgianna Temple, to be enrolled members of the Oglala Sioux Tribe and residents of the Pine Ridge Indian Reservation. The defendant, Ward Ellis, is a non-Indian. The alleged automobile accident in which plaintiff was injured occurred on May 30, 1965, within the limits of the Pine Ridge Indian Reservation in Washabaugh County, South Dakota. All defendants were served with process within the Reservation. For this reason the action was dismissed against the non-Indian defendant. It was dismissed against the Indian defendants because of lack of jurisdiction over their persons and the subject matter.

Civil and criminal jurisdiction of state courts over Indians and Indian country are coincidental branches of the same tree. This court has considered the question of criminal jurisdiction in several recent cases, Application of De Marrias, 77 S.D. 294, 91 N.W.2d 480; State ex rel. Hollow Horn Bear v. Jameson, 77 S.D. 527, 95 N.W.2d 181; In re High Pine's Petition, 78 S.D. 121, 99 N.W.2d 38; State v. De Marrias, 79 S.D. 1, 107 N.W.2d 255, cert. den. 368 U.S. 844, 82 S.Ct. 72, 7 L.Ed.2d 42; Lafferty v. State, 80 S.D. 411, 125 N.W.2d 171; In re Hankins' Petition, 80 S.D. 435, 125 N.W.2d 839; Wood v. Jameson, 81 S.D. 12, 130 N.W.2d 95; State v. Barnes, 81 S.D. 511, 137 N.W.2d 683; and State ex rel. Swift v. Erickson, 82 S.D. 60, 141· N.W.2d 1. The cases of In re High Pine's Petition and In re Hankins' Petition are particularly pertinent and precedential on the pending question of our courts' civil jurisdiction. These cases cite and discuss:

1. The disclaimer of state jurisdiction over all lands owned or held by Indians and Indian tribes until title thereto has been

extinguished appearing in the Enabling Act as a condition of statehood and likewise incorporated in the compact with the United States in Art. XXII of our Constitution;

2. The conditional consent of Congress to any state, including South Dakota, not having jurisdiction with respect to criminal offenses or civil causes of action over Indians and Indian territory to assume such jurisdiction in the manner specified in the Act of August 15, 1953, being Public Law 280, Ch. 505, 67 Stat. 588;

3. The impact and application of the landmark case of Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251; and

4. The various statutory efforts of this state to conditionally or partially assume civil and criminal jurisdiction over Indians and Indian territory by Chapter 319, Laws of 1957; Chapter 464, Laws of 1961; and Chapter 467, Laws of 1963 which was referred to and rejected by the people of this state in the election of 1964. It would serve no useful purpose to restate and recite these background jurisdictional factors at length. In summary our cases involving criminal jurisdiction recognize and hold that:

1. The disclaimer of jurisdiction contained in our Enabling Act and Constitution deprives our state of criminal jurisdiction over Indians and Indian territory;

2. Public Law 280 is not a present grant of jurisdiction and this state has not effectively, affirmatively, and unequivocally acted to assume jurisdiction in the manner specified in such Act, therefore,

3. Criminal jurisdiction over Indians for crimes committed within Indian territory in South Dakota is exclusively vested in the Federal and Tribal courts.

The same principles govern and the same conclusion applies to state civil jurisdiction over an enrolled tribal Indian defendant in a cause of action arising within Indian country. Since the enactment of Public Law 280 and the decision of Williams v. Lee, supra, other courts have arrived at the same conclusion,

viz: Valdez v. Johnson, 68 N.M. 476, 362 P.2d 1004, in an action between Indians arising out of an automobile collision in Indian country; Whyte v. District Court of Montezuma County, 140 Colo. 334, 346 P.2d 1012, in an action for divorce; and State ex rel. Adams v. Superior Court, 57 Wash.2d 181, 356 P.2d 985 and In re Colwash, 57 Wash.2d 196, 356 P.2d 994, involving the jurisdiction of the Juvenile Court over minor dependent enrolled members of Indian tribes residing on Indian Reservations.

A resident tribal Indian is entitled as a matter of right to bring and maintain a civil action in our state courts for the redress of wrongs against his person and property. Sec. 20, Art. VI, S.D.Const. However, he does not have superior rights over a non-Indian plaintiff and his status does not confer civil jurisdiction on our courts over tribal Indian defendants in causes of action arising in Indian country. Until this state acts effectively and affirmatively to assume jurisdiction over Indians and Indian territory this anomalous jurisdictional anachronism will continue.

In asserting jurisdiction plaintiff relies largely upon the North Dakota case of Vermillion v. Spotted Elk (1957), N.D., 85 N.W.2d 432, which involved identical jurisdictional facts. Both parties were Indians and the action arose out of an automobile accident on a state highway within an Indian Reservation. Our Enabling Act is the same and our constitutional disclaimers of jurisdiction over Indian lands coincide. In upholding jurisdiction the North Dakota court reasoned that Indians "are citizens of the United States and residents of the State of North Dakota. Under Section 22 of the Constitution the courts of the State are open to them. The compact between the United States and the State of North Dakota created by the Enabling Act and the disclaimer in Section 203 of the Constitution, have reference to Indian lands. The provisions of the compact cannot be held to be a reservation by the United States of jurisdiction in civil cases not involving lands, between Indians residing on Indian reservations".

In so holding the North Dakota court viewed the disclaimer in the Enabling Act and Constitution as a disclaimer over Indian land only and not as a general disclaimer of state jurisdiction over Indian Reservations as separate sovereignties. Ver-

million v. Spotted Elk was decided in 1957.[1] The concept of inherent state jurisdiction over Indian Reservations was laid to rest by the United States Supreme Court in Williams v. Lee (1959), 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251, in which the Worcester v. State of Georgia, 6 Pet. 515, 8 L.Ed. 483 doctrine of tribal sovereignty was reaffirmed in the following quotation from the opinion of Chief Justice Marshall "The Cherokee nation * * * is a distinct community, occupying its own territory * * * in which the laws of Georgia can have no force, and which the citizens of Georgia have no right to enter, but with the assent of the Cherokees themselves, or in conformity with treaties, and with the acts of Congress. The whole intercourse between the United States and this nation, is, by our constitution and laws, vested in the government of the United States." The court clarified and amplified its position by stating "Despite bitter criticism and the defiance of Georgia which refused to obey this Court's mandate in Worcester the broad principles of that decision came to be accepted as law. Over the years this Court has modified these principles in cases where essential tribal relations were not involved and where the rights of Indians would not be jeopardized, but the basic policy of Worcester has remained. Thus, suits by Indians against outsiders in state courts have been sanctioned. See Felix v. Patrick, 145 U.S. 317, 332, 12 S.Ct. 862, 867, 36 L.Ed. 719; United States v. Candelaria, 271· U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023. See also Harrison v. Laveen, 67 Ariz. 337, 196 P.2d 456. And state courts have been allowed to try non-Indians who committed crimes against each other on a reservation. E. g., People of State of New York ex rel. Ray v. Martin, 326 U.S. 496, 66 S.Ct. 307, 90 L.Ed. 261. But if the crime was by or against an Indian, tribal

1. Since Vermillion v. Spotted Elk civil jurisdiction over Indian land in North Dakota has apparently turned full circle. In 1958, the constitutional disclaimer clause was amended by the following addition—"provided, however, that the Legislative Assembly of the state of North Dakota may, upon such terms and conditions as it shall adopt, provide for the acceptance of such jurisdiction as may be delegated to the state by act of Congress". Pursuant thereto the Legislative Assembly enacted Chapter 242 of the 1963 Session Laws (Chapter 27-19, 1963 Pocket Supp. to N.D.C.C. whereby state civil jurisdiction over causes of action arising on Indian reservations was extended upon acceptance by the Indians in a manner provided by the Act. The North Dakota Supreme Court said "The effect of this legislation is to completely disclaim State jurisdiction over civil causes of action arising on an Indian reservation unless the Indians themselves have acted to accept jurisdiction in the manner provided by the statute." In re Whiteshield (1963), N.D., 124 N.W.2d 694. In the absence of Indian acceptance of such jurisdiction the court went on to hold that a Juvenile Court had no jurisdiction over Indian parents and children residing on a reservation to determine parental rights to the minor children.

jurisdiction or that expressly conferred on other courts by Congress has remained exclusive. Donnelly v. United States, 228 U.S. 243, 269-272, 33 S.Ct. 449, 458-459, 57 L.Ed. 820; Williams v. United States, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962. Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them. Cf. Utah & Northern Railway Co. v. Fisher, 116 U.S. 28, 6 S.Ct. 246, 29 L.Ed. 542.

"Congress has also acted consistently upon the assumption that the States have no power to regulate the affairs of Indians on a reservation. To assure adequate government of the Indian tribes it enacted comprehensive statutes in 1834 regulating trade with Indians and organizing a Department of Indian Affairs. 4 Stat. 729, 735. Not satisfied solely with centralized government of Indians, it encouraged tribal governments and courts to become stronger and more highly organized. See, e. g., the Wheeler-Howard Act, §§ 16, 17, 48 Stat. 987, 988, 25 U.S.C. §§ 476, 477, 25 U.S.C.A. §§ 476, 477. Congress has followed a policy calculated eventually to make all Indians full-fledged participants in American society. This policy contemplates criminal and civil jurisdiction over Indians by any State ready to assume the burdens that go with it as soon as the educational and economic status of the Indians permits the change without disadvantage to them. See H.R. Rep. No. 848, 83d Cong., 1st Sess. 3, 6, 7 (1953). Significantly, when Congress has wished the States to exercise this power it has expressly granted them the jurisdiction which Worcester v. State of Georgia had denied."

We accordingly, conclude the Circuit Court had no jurisdiction over the defendants in this action or the subject matter involved.

Affirmed.

All the Judges concur.