No. 74–783.   DEMARRIAS *v.* POITRA.   C. A. 8th Cir.
Motion of Standing Rock Sioux Tribe for leave to file a
brief as *amicus curiae* granted.   Certiorari denied.

MR. JUSTICE WHITE, dissenting.

Petitioner and respondent are both enrolled Indians
residing on the Standing Rock Sioux Indian Reservation,
a reservation which straddles the border of North Dakota
and South Dakota.   Petitioner is resident in the portion
of the reservation in South Dakota, and respondent lives
within that portion in North Dakota.   This litigation arose
from an automobile accident occurring on the reservation
in North Dakota.   Respondent's son was injured by a car

driven by petitioner and died as a result. Respondent brought this wrongful death action based upon North Dakota law in the Federal District Court, invoking its jurisdiction under 28 U. S. C. § 1332 (a). When petitioner failed to respond, the North Dakota Unsatisfied Judgment Fund appeared and moved to dismiss for lack of subject-matter jurisdiction.

The District Court, basing its decision upon *Erie R. Co.* v. *Tompkins,* 304 U. S. 64 (1938), concluded that it did not have jurisdiction over respondent's suit. The Standing Rock Sioux Tribe had not consented to the jurisdiction of the North Dakota state courts, as required for the exercise of state-court jurisdiction in civil suits between Indians under 25 U. S. C. § 1322 (a), and the state courts would not have jurisdiction over respondent's suit although based upon North Dakota substantive law. See *Gourneau* v. *Smith,* 207 N. W. 2d 256 (ND 1973). Viewing itself as another state court in diversity cases, the District Court concluded that it, too, could not entertain the suit. 369 F. Supp. 257 (ND 1973).

The Court of Appeals reversed. 502 F. 2d 23 (CA8 1974). It concluded that there was no state policy involved in the absence of state-court jurisdiction over this type of litigation. The lack of jurisdiction arose from the *federal* requirement of consent by the Indians to such jurisdiction and the failure of the tribe here to consent. The federal "consent" statute, 25 U. S. C. § 1322 (a), was not intended to deprive Indians of state-created substantive rights, but rather had as its purpose an effort to prevent the States from interfering with Indian affairs. See 502 F. 2d, at 29.

The court below acknowledged that the Court of Appeals for the Ninth Circuit had in two decisions held that a district court could not exercise diversity jurisdiction in situations in which the state courts would not exercise

subject-matter jurisdiction. See *Hot Oil Service, Inc.* v. *Hall,* 366 F. 2d 295 (1966); *Littell* v. *Nakai,* 344 F. 2d 486 (1965), cert. denied, 382 U. S. 986 (1966). It distinguished those decisions on the ground that each involved an effort to avoid interference, under the principle of *Williams* v. *Lee,* 358 U. S. 217 (1959), with tribal self-government. In this case, in contrast, the suit involved a dispute between two Indian litigants, and there were no "interfering outsiders . . . trying to foist jurisdiction on the Indians." 502 F. 2d, at 29.

The court below, however, misconstrued the role of the discussion of *Williams* v. *Lee, supra,* in the Ninth Circuit decisions. When those cases were decided, the question of whether the subject matter of the litigation was essential to tribal self-government was the key to whether state courts could exercise jurisdiction. See 358 U. S., at 223. Since its enactment in 1968, however, the "consent" statute, 25 U. S. C. §§ 1322 (a) and 1326, provides an explicit procedure through which civil jurisdiction over Indians can be obtained by state courts. See *McClanahan* v. *Arizona State Tax Comm'n,* 411 U. S. 164, 177–178 (1973); *Kennerly* v. *District Court of Montana,* 400 U. S. 423 (1971). It is conceded here that the subject matter of this suit, whether or not essential to tribal self-government, cannot be the basis for state-court jurisdiction. Therefore, the significant aspect of the Ninth Circuit decisions is their reliance upon *Woods* v. *Interstate Realty Co.,* 337 U. S. 535 (1949). Extending that reliance to this case would result in a conclusion that the federal courts did not have jurisdiction.

The decisions of the Courts of Appeals for the Eighth and Ninth Circuits are, therefore, squarely in conflict, and resolution of the conflict will require an appraisal of the roles of the *Erie R. Co.* v. *Tompkins* line of cases

and of the federal legislation governing jurisdiction by state courts over Indians in this factual situation.

I would grant certiorari.