**AMERICAN INDIAN NATIONAL BANK**

v.

**Betty RED OWL.**

**No. Civ. 78–3050.**

United States District Court,
D. South Dakota, C. D.

Sept. 17, 1979.

Wm. Jason Groves, Rapid City, S. D., for plaintiff.

Mark L. Becker, South Dakota Legal Services, Inc., Mission, S. D., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### CASE SUMMARY

On December 5, 1978, plaintiff, a citizen of the District of Columbia, filed a complaint against the defendant, an enrolled member of the Rosebud Sioux Tribe, residing on the Rosebud Indian Reservation in South Dakota, claiming diversity jurisdiction under 28 U.S.C. § 1332. The complaint sought to reduce a promissory note signed by the defendant to judgment, and to take possession of property in which plaintiff held a security interest. The secured property was also located on the Rosebud Indian Reservation.

The defendant made no answer to the complaint, and default was entered by the clerk on April 16, 1978. Thereafter, on April 27, 1979, a default judgment was entered against the defendant. On May 10, 1979, counsel for the defendant moved to set aside the default judgment, contending, among other things, that this Court lacked subject matter jurisdiction. After due consideration, this Court finds that it has jurisdiction, and denies the motion.

### LEGAL BACKGROUND

It is fairly clear that under the rule of *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), a South Dakota state court would lack jurisdiction over both the defendant and the secured property on the Reservation. The South Dakota Supreme Court has recognized this fact at least twice. *Smith v. Temple,* 82 S.D. 650, 152 N.W.2d 547 (1967), involved a state suit by an Indian against other Indians arising from an automobile accident within the limits of the Pine Ridge Indian Reservation. The defendants were served with process on the Reservation, but the action was dismissed by the trial judge. On appeal, the court recited an extensive quotation from *Williams,* and affirmed the trial court's conclusion that it "had no jurisdiction over the defendants in this action or the subject matter involved." 152 N.W.2d at 550. This was followed the next year in *Kain v. Wilson,* 83 S.D. 482, 161 N.W.2d 704 (1968), which found a state court had "no jurisdiction to hear and determine a civil action for the wrongful use and possession of land located in Indian Country by a tribal Indian defendant," 161 N.W.2d at 706.[1]

This Court has also been presented with the question of state civil jurisdiction in a context similar to this case. In *Annis v. Dewey County Bank,* 335 F.Supp. 133 (D.S. D.1971), an enrolled Indian sought an injunction against state officials who were attempting to go onto the Cheyenne River

---

1. See also *O'Connell v. Hamm,* S.D., 267 N.W.2d 839 (1978); *Kromer v. Sullivan,* S.D., 225 N.W.2d 591 (1975).

Sioux Indian Reservation to attach his cattle in execution of a state court judgment. This Court granted a permanent injunction, agreeing with plaintiff that "state officials have no power or jurisdiction" over an enrolled Indian's property on a reservation. 335 F.Supp. at 136.

The defendant here argues that because the plaintiff would have been unable to get jurisdiction over the defendant or her property in state court, the diversity jurisdiction of this Court must also be defeated. In support of her contention, defendant cites *Woods v. Interstate Realty Co.,* 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) and *Angel v. Bullington,* 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947) both of which held that where

> one is barred from recovery in the state court, he should likewise be barred in the federal court. The contrary result would create discrimination against citizens of the State in favor of those authorized to invoke the diversity jurisdiction of the federal courts. It was that element of discrimination that *Erie R. Co. v. Tompkins* [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] was designed to eliminate. 337 U.S. at 538, 69 S.Ct. at 1237.

Defendant contends that when this doctrine is set alongside the principle of non-interference with Tribal affairs, enunciated by *Williams v. Lee, supra,* this Court must necessarily find that it lacks diversity jurisdiction. Two cases from the Ninth Circuit, *Hot Oil Service, Inc. v. Hall,* 366 F.2d 295 (9th Cir. 1966) and *Littell v. Nakai,* 344 F.2d 486 (9th Cir. 1965), cert. denied 382 U.S. 986, 86 S.Ct. 531, 15 L.Ed.2d 474 (1966), would seem to support defendant's position. To reach the conclusion urged by defendant would be deceptively simple. The Eighth Circuit, however, has decided the issue otherwise, and this Court follows the precedent of *Poitra v. Demarrias,* 502 F.2d 23 (8th Cir. 1974), cert. denied 421 U.S. 934, 95 S.Ct. 1664, 44 L.Ed.2d 93 (1975).

**2.** This Court is also aware that continuing validity of *Woods* and *Angel* has been called into

## THE RULE OF *POITRA* AS APPLIED TO THIS CASE

The first arm of defendant's argument, that this Court cannot entertain this action because it is not maintainable in a South Dakota state court, was decisively put to rest by *Poitra.* *Poitra* emphasized that one of the fundamental reasons for the *Erie* doctrine, and its concomitant reversal of *Swift v. Tyson,* 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842), was " 'the vital recognition of the necessary bridling of encroaching federalism in areas of *state policy.*'" (Emphasis in original.) 502 F.2d at 26, citing *Prashar v. Volkswagen of America, Inc.,* 480 F.2d 947, 952 (8th Cir. 1973), cert. denied 415 U.S. 994, 94 S.Ct. 1596, 39 L.Ed.2d 891 (1974). Certainly, a court must be mindful of the language in which *Erie* rejected the use of federal instead of state law in diversity cases:

> The Constitution of the United States . . . recognizes and preserves the autonomy and independence of the States,—independence in their legislative and independence in their judicial departments. Supervision over either the legislative or the judicial action of the states is in no case permissible except as to matters by the constitution specifically authorized or delegated to the United States. Any interference with either, except as thus permitted, is an invasion of the authority of the state, and, to that extent, a denial of its independence. 304 U.S. at 78–9, 58 S.Ct. at 822–823.

■ Thus, the reason for the holdings in *Angel* and *Woods* becomes clear. The lawsuit in *Angel* involved a state statute which precluded deficiency judgments, and the *Woods* case involved a state statute which barred suits in state court by a corporation which was not qualified to do business in that state.[2] If a federal court allows actions in diversity which a state itself expressly bars, not only would the Court discriminate against the citizens of that state, but, more importantly, it would also invade the Constitutional independence of the state

question. Wright, Law of Federal Courts, 199 (3rd Ed.1976).

and its ability to set its own policy. *See Poitra,* 502 F.2d at 25 n. 4.

█ In this case, that problem does not arise. There can be no suggestion that a state has set up a bar to lawsuits by its citizens against reservation Indians. As *Poitra* said, "The reason that [a state] lacks jurisdiction over this civil action is because of the special status given Indians under *federal* law, not because of any *state* policy consideration." 502 F.2d at 27. (Emphasis in original.) The defendant would characterize the three failures of South Dakota to assume jurisdiction over the reservations as such an expression of state policy,[3] but these can hardly be equated with the express "door-closing" statutes in *Angel* and *Woods.* If anything, the failures might be attributed more to a reluctance to bear the costs of acquiring *criminal* jurisdiction than to unwillingness to take *civil* jurisdiction. In any event, considering the familiar rule that "unsuccessful attempts at legislation are not the best of guides to legislative intent," *Red Lion Broadcasting Co., Inc. v. F. C. C.,* 395 U.S. 367, 382 n. 11, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969), this Court cannot say that the failures constitute such an "identifiable state interest," *Poitra,* 502 F.2d at 26, as would bar a federal court from hearing this action in diversity.

█ Defendant asserts that the criticisms of the *Swift v. Tyson* rule which *Erie* corrected—discrimination against citizens of a state in favor of non-citizens and forum shopping—would arise here if this action were allowed in federal court. The answer to the charge of discrimination is that citizens of South Dakota, though barred from state and federal court,[4] would not be left without a forum in this case. An examination of the Rosebud Tribal Ordinances governing civil actions reveals that the Rosebud Sioux Tribal Court would appear to have jurisdiction over this lawsuit, and is open to state citizens.[5] As for the argu-

ment of forum shopping, this Court will only repeat *Poitra's* statement that "federal courts have an obligation to exercise jurisdiction, when the statutory requisites are satisfied." 502 F.2d at 27.

█ Finally, the Court turns to defendant's argument that assuming diversity jurisdiction in this case violates the policy of *Williams v. Lee:* "to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." 358 U.S. at 223, 79 S.Ct. at 272. The contention that federal court jurisdiction violates this policy to the same extent as state court jurisdiction was considered and rejected in *Poitra.* The Court of Appeals made it clear that the federal policy with regard to Tribal self-government is "to prevent unwanted and unnecessary encroachment upon Indian tribes *by the states.* We fail to conceive of any Congressional or judicial policy limitations requiring the federal court to refuse adjudication of this or similar claims when its jurisdiction is properly invoked." 502 F.2d at 29. (Emphasis in original). This Court need say no more.

Having determined the jurisdictional question adversely to the defendant, and finding no merit in the other grounds urged to set aside the default judgment, it is ordered that defendant's motion is denied.

---

3. For a history of these attempts, see *White v. Califano,* 437 F.Supp. 543, 561–63 (D.S.D.1977).

4. *See Schantz v. White Lightning,* 502 F.2d 67 (8th Cir. 1974).

5. Unlike the Tribal Court in *Schantz v. White Lightning, supra,* 502 F.2d at 69, n. 2, there appears to be no jurisdictional limit on the amount that can be recovered.