STATE of South Dakota, Plaintiff and Appellee,

v.

Dennis W. ONIHAN, Defendant and Appellant.

No. 15947.

Supreme Court of South Dakota.

Argued April 26, 1988.

Decided Aug. 3, 1988.

John P. Guhin, Deputy Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Michael T. Swallow of Dakota Plains Legal Services, Mission, for defendant and appellant.

SABERS, Justice.

### Facts

On August 31, 1986, Dennis Onihan (Onihan) was arrested by a South Dakota Highway Patrol officer on a charge of driving while under the influence. The offense took place on a public highway in Day County; the highway is a right-of-way running through Indian trust land and is in Indian country. Onihan is an enrolled member of the Sisseton Wapheton Sioux Tribe. The arresting officer was not cross-deputized as either a BIA or Tribal Police Officer.

Onihan was charged in Day County Circuit Court. He moved to dismiss the charges on the grounds that the state court had neither personal nor subject matter jurisdiction. The trial court denied Onihan's motion to dismiss and held that the State had jurisdiction over crimes committed by Indians "on any highway" running through Indian country in South Dakota pursuant to SDCL 1–1–21. The case was tried to the court and Onihan was found guilty. Onihan appeals.

### History

This jurisdiction issue requires a review of the federal and state statutory and case-law which form the foundation for interpretation of current law.

In 1953, the United States Congress enacted Public Law 280.[1] This federal jurisdictional statute provided for both mandatory and optional transfer of civil and criminal jurisdiction over Indian country[2] from the federal government to the states. Pub-

---

1. 67 Stat. 588–590, codified in part at 18 U.S.C. § 1162.

2. Indian country, defined at 18 U.S.C. § 1151, includes all land within the limits of any Indian reservation, all dependent Indian communities within the borders of the United States, and all Indian allotments which are still held by Indians.

lic Law 280 gave mandatory jurisdiction (with a few geographic exclusions) to Alaska, California, Minnesota, Nebraska, Oregon, and Wisconsin. These states were granted immediate jurisdiction over civil and criminal causes of action arising on most Indian reservations and Indian trust lands within their state borders. However, at the time Public Law 280 was drafted, it was not clear that other states were either willing or able to accept an immediate transfer of jurisdiction. Some states, designated disclaimer states, had constitutions or statutes containing organic law disclaimers[3] of jurisdiction over Indian country. Because it was not within the power of the federal legislature to remove these disclaimers and several Indian tribes objected to the states assuming jurisdiction, Section 6 of Public Law 280 was drafted and enacted:

Sec. 6. Notwithstanding the provisions of any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this Act: Provided, That the provisions of this Act shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes as the case may be.

Section 6 of Public Law 280 "was placed in the Act to eliminate possible organic law barriers to the assumption of jurisdiction by disclaimer States." *Washington v. Yakima Indian Nation*, 439 U.S. 463, 495, 99 S.Ct. 740, 759, 58 L.Ed.2d 740, 764 (1979). It is a procedural provision applicable to disclaimer states.

Section 7 of Public Law 280 states:

The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof.

Section 7 has been construed to be a substantive provision applicable to all option states. *Yakima*, 439 U.S. at 495–497, 99 S.Ct. at 764–766.

In 1957, the South Dakota Legislature enacted SDCL 1–1–12 through 1–1–16 in response to Public Law 280 and the removal of the federal bar to assumption of jurisdiction by the State. These statutes conditioned the acceptance and assumption of jurisdiction over Indian country on: 1) the consent of the tribes, SDCL 1–1–13;[4] 2) the consent of affected counties, SDCL 1–1–14; and 3) the existence of contracts between affected counties and the federal government for reimbursement of costs associated with the assumption of jurisdiction, SDCL 1–1–14. These conditions have never been met and it appears clear from subsequent caselaw and legislative action that, although these statutes remain on the books, they have no effect.

SDCL 1–1–17,[5] enacted in 1959, was this state's acceptance and assumption of con-

---

**3.** The 1889 Enabling Act which admitted South Dakota, North Dakota, Montana, and Washington into the Union contained a provision which required that the constitutions of each of these states provide a disclaimer of title to and jurisdiction over Indian lands within their respective borders. S.D. Const., art. XXII contains the required disclaimer.

**4.** SDCL 1–1–13 provides that the consent of a tribe is deemed to have occurred if no tribal referendum is held within one year after October 1, 1957. The State asserts that "[a]ll the tribes apparently did ... exercise such a veto." We assume these vetoes occurred, but if not, the other two conditions clearly were not met.

**5.** SDCL 1–1–17 provides:

The United States of America having ceded to the state of South Dakota concurrent police jurisdiction excepting the ten major crimes as defined by 18 USC section 1153, unless automobile accidents are involved, over all public highways or portions thereof, including rights-of-way, located within the state of South Dakota:

(1) Which are established through any Indian reservation or through any lands which have been allotted in severalty to any individual Indian, under any laws or treaties, but which have not been conveyed to the allottee with full power of alienation, and:

current police jurisdiction over all public highways, including rights-of-way, in Indian country in South Dakota. The jurisdiction assumed is limited to criminal jurisdiction over crimes *other than* the ten major crimes [6] found in 18 U.S.C. § 1153, unless automobile accidents are involved. The terms of SDCL 1-1-17 raise some questions as to its ultimate effect. Which federal "cession" of jurisdiction this statute relates to is not apparent from reading the session law and codified statute. The statute provides for "concurrent police jurisdiction." A lack of any substantive legislative history makes it difficult to discern if the jurisdiction assumed was concurrent with the federal government only or also with tribal government.[7] Additionally, it is unclear why the term "police" jurisdiction was used, rather than criminal jurisdiction. Research has uncovered no equivalent use of this term. One possible explanation is that the term was used to limit the scope of the jurisdiction accepted; geographically and as to subject matter. Subsection (2) of SDCL 1-1-17 further limits the scope of jurisdiction to highways jointly established or maintained by the state and federal government.

In 1961, SDCL 1-1-18 [8] through 1-1-21 were enacted. SDCL 1-1-18 obligates and binds the state to assumption of civil and criminal jurisdiction in Indian country within South Dakota. SDCL 1-1-19 provides that assumption of this jurisdiction may be conditioned upon federal reimbursement for the additional costs of assumption of jurisdiction. SDCL 1-1-21 provides a sec-

ond condition—that the governor must issue a proclamation declaring jurisdiction accepted and assumed. More importantly for this case, SDCL 1-1-21 also provides in part:

> *Except as to criminal offenses and civil causes of action arising on any highways,* as the term is defined in chapter 31-1,[9] the jurisdiction provided for in § 1-1-18 shall not be assumed or deemed accepted by this state, and §§ 1-1-18 and 1-1-20 shall not be considered in effect, unless and until ... [the conditions are met]. (emphasis added).

Finally, SDCL 1-1-20 is designed to repeal SDCL 1-1-12 through 1-1-17, subject to the provisions of SDCL 1-1-21.

In 1964, this court addressed the effect of SDCL 1-1-18 through 1-1-21 in *Petition of Hankins*, 80 S.D. 435, 125 N.W.2d 839 (1964). The facts in *Hankins* are similar to the facts in this appeal, in that the Indian defendant claimed the State lacked jurisdiction to try her for the offense of drunk driving, allegedly committed on a highway within the Pine Ridge Indian Reservation. We stated that it was clear that Section 6 of Public Law 280 was intended to apply to South Dakota, thus the statutes which the State claimed as the jurisdictional basis had to conform to the requirements of that section. We then held that the attempt to assume partial jurisdiction, i.e., jurisdiction over highways in Indian country, was invalid as not being within the intent or purpose of Congress in enacting Public Law 280.

---

(2) Which were established or which are maintained by the joint participation of the United States and the state of South Dakota. The state of South Dakota hereby accepts such jurisdiction.

6. Since the passage of SDCL 1-1-17, the Major Crimes Act has been amended to change the number of major crimes from time to time. *See* 18 U.S.C. § 1153.

7. The Sisseton Wapheton Sioux Tribal Code, ch. 27, § 27-02-10, specifically prohibits driving under the influence of drugs or alcohol.

8. SDCL 1-1-18 provides:

The state of South Dakota, in accordance with the provisions of 67 Statutes at Large, page

589 (Public Law 280), hereby assumes and accepts jurisdiction of all criminal offenses and civil causes of action arising in the Indian country located within this state, as Indian country is defined by Title 18 United States Code, section 1151, and obligates and binds this state to the assumption thereof, the provisions of chapter 106 of the Session Laws of the state of South Dakota for 1901, as amended, or any other law of this state to the contrary, notwithstanding.

9. SDCL 31-1-1 defines "highway" as "[e]very way or place of whatever nature open to the public, as a matter of right, for purposes of vehicular travel ... The term 'highway' ..." does not include roadways or driveways owned by private persons, colleges, universities, or other nonpublic institutions.

In 1963, the South Dakota Legislature amended the statutes at issue to provide for the unconditional assumption of jurisdiction in Indian country. However, a referendum petition was filed to place this issue on the ballot in the following election and the voters soundly·rejected the unconditional assumption of jurisdiction.[10]

■ In 1968, Congress passed the Indian Civil Rights Act, 25 U.S.C. § 1301 et seq. Section 1322 of the Act amended Public Law 280 by requiring tribal consent to state assumption of jurisdiction. This consent requirement is applicable to any state assumption of jurisdiction *after* 1968; this requirement is not, however, to be retroactively applied to assumptions of jurisdiction which occurred prior to 1968. *State ex. rel. May v. Seneca–Cayuga Tribe*, 711 P.2d 77, 88 (Okla.1985); *Airvator, Inc. v. Turtle Mountain Mfg. Co.*, 329 N.W.2d 596, 599 (N.D.1983); *Sheppard v. Sheppard*, 104 Idaho 1, 14, 655 P.2d 895, 908 (1982). Therefore, this requirement of tribal consent does not apply to either SDCL 1–1–17 or 1–1–21.

■ In 1979, the United States Supreme Court in *Yakima* upheld Washington's assumption of partial jurisdiction over Indian country within the state.[11] It seems clear that to the extent that *Hankins* held that state assumption of partial jurisdiction was invalid under Public Law 280, it is now overruled by *Yakima*. Thus, the state may exercise partial jurisdiction if the statutes so provide. However, jurisdiction cannot be assumed unless this court finds that the state legislature has taken the requisite "positive action" under §§ 6 and 7 of Public Law 280.[12] In *Yakima*, the United States Supreme Court stated that the determination of the effectiveness of state legislative action to remove or repeal the disclaimer is a question of state law to be decided by the Supreme Courts of the affected states. 439 U.S. at 493, 99 S.Ct. at 761.

### Question Presented

The question before this court is the effect of SDCL 1–1–12 through 1–1–21 on the

> A vote *"Yes"* is in favor of sustaining the Act of the Legislature.
> A vote *"No"* is in favor of rejecting the Act of the Legislature passing said law. (emphasis added).

Onihan does not contend that the statement was misleading or that the public was misinformed. Further, the statement itself unambiguously expresses that only the 1963 amendment is at issue in the referendum. Since the people rejected the 1963 amendments in the referendum vote, these changes never went into effect. Thus, neither the proposed amendment, nor the referendum had any effect upon other existing state statutes.

---

**10.** Onihan contends that SDCL 1–1–12 through 1–1–21 are no longer in effect, as they were rejected by the 1964 referendum. He reasons that the 1964 referendum vote, which rejected Session Law 1963, Chapter 467, prohibits the state from assuming *any* jurisdiction over Indian country, such as the partial assumption of jurisdiction in SDCL 1–1–17 and 1–1–21. In fact, the 1964 referendum was, and only could be, aimed at one question under the South Dakota Constitution and statutes. That question was the validity of Session Law 1963, Chapter 467, which sought to amend the 1961 version of SDCL 1–1–18 through 1–1–21. Onihan points to the explanatory statement of the attorney general to bolster his argument that the referendum was a rejection of any jurisdiction by the state:

> EXPLANATORY STATEMENT BY THE ATTORNEY GENERAL:
> The above entitled Act was passed by the 1963 Legislature under authority of Public Law 280 of the United States Congress. This legislative Act was, by petition, referred to the electors for vote.
> If the voters approve of the Act of the Legislature, the state will have jurisdiction to enforce the state's civil and criminal laws, involving Indians on the Indian Reservations.
> If the voters disapprove of the Act of the Legislature, the Indians will continue under the jurisdiction of the Federal government for major crimes and the Tribal Councils for minor crimes and civil actions.

**11.** The Washington statute assumed civil and criminal jurisdiction over eight subject matter areas: compulsory school attendance; public assistance; domestic relations; mental illness; juvenile delinquency; adoption proceedings; dependent children; and operation of motor vehicles upon public streets, alleys, roads, and highways. *Yakima, supra*, 439 U.S. at 465, 99 S.Ct. at 741–42.

**12.** And if under state law a constitutional amendment is not required, disclaimer States must still take positive action before Pub.L. 280 jurisdiction can become effective. *Yakima*, 439 U.S. at 493, 99 S.Ct. at 761.

disclaimer of jurisdiction in our state constitution.[13] Further, we must determine whether these statutes evidence sufficient positive action for the assumption of partial jurisdiction over the highways in Indian country, pursuant to § 7 of Public Law 280.

The determination of these questions is difficult in light of extensive prior caselaw which supports the proposition that the State has *never* had criminal jurisdiction over Indian defendants in Indian country. *See, e.g., State v. Molash,* 86 S.D. 558, 199 N.W.2d 591 (1972); *Smith v. Temple,* 82 S.D. 650, 152 N.W.2d 547 (1967); *Hankins, supra; Petition of High Pine,* 78 S.D. 121, 99 N.W.2d 38 (1959); *United States v. Erickson,* 478 F.2d 684, 685, n. 1 (8th Cir. 1973). These cases, decided prior to *Yakima,* appear to be and may be based on the contention that the State could not assume partial jurisdiction.

### Decision

■ Initially, we agree with Onihan that the legislative history of Public Law 280 and subsequent action by other states does not support the contention that states could condition the assumption of jurisdiction on federal reimbursement. Therefore, SDCL 1-1-12 through 1-1-16 and 1-1-18 through 1-1-21, except for the exception provision, are insufficient to transfer any jurisdiction to the State.

■ Construing these statutes together (1-1-12 through 1-1-21), the following results are evident: SDCL 1-1-20 effectively repeals SDCL 1-1-12 through 1-1-17 insofar as they relate to criminal offenses and civil actions arising on any highways in Indian country. While SDCL 1-1-21 provides that 1-1-20's repeal of these statutes is not effective until the governor is satisfied with the reimbursement plan and files his proclamation, it makes an exception in the case of highways in Indian country. Thus, the repeal of SDCL 1-1-12 through

1-1-17 is effective as those statutes relate to such highways.

Since the condition in SDCL 1-1-21 for complete assumption of jurisdiction has never been satisfied, the question is whether the "except" clause in SDCL 1-1-21 is sufficient under Public Law 280 for the assumption of civil and criminal jurisdiction over highways in Indian country. The exception clearly removes the assumption of jurisdiction over highways in Indian country from the conditional acceptance portion of SDCL 1-1-21. However, we must still determine whether the State has by "affirmative legislative action" obligated and bound itself to assumption of such jurisdiction.

In reading SDCL 1-1-21, we find that the "except" clause modifies the conditional acceptance and assumption of jurisdiction in SDCL 1-1-18. In other words, if SDCL 1-1-18 permits the transfer of jurisdiction, then the exception in SDCL 1-1-21 is sufficient because the exception is not controlled by the conditions. SDCL 1-1-18 clearly states that jurisdiction is assumed and accepted and the State obligates and binds itself to the assumption thereof. The exception provision of SDCL 1-1-21 makes the assumption of civil and criminal jurisdiction over highways effective immediately, not conditionally. We hold that this wording is sufficient to satisfy the procedural and substantive provisions of Public Law 280. This constitutes sufficient "positive action." Therefore, the exception in SDCL 1-1-21 provides for the State's assumption of both civil and criminal jurisdiction over public highways in Indian country.

We affirm.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., specially concurs.

**13.** This question was not previously decided by *Hankins, supra.* The court in *Hankins* correctly noted that the revocation of our constitutional disclaimer may be accomplished by legislative action, but it did not specifically address the question of whether SDCL 1-1-12 to 1-1-21 actually accomplished the task. As noted above, the court determined that any attempted partial assumption of jurisdiction was invalid under Public Law 280.

HENDERSON, Justice (specially concurring).

As one continues to struggle in reading the law, it is perceived that gradations of jurisdiction exist, not to mention variances, as the type of Indian jurisdiction cases surface in the appellate bodies. Specifically, in this type of case, basic questions should be asked: Does this case involve tort law? Family law? Criminal law? If the latter, does the case pertain to one of the major crimes? *See* 18 U.S.C. § 1153. Or are we just considering a minor crime? An analysis must further encompass the specific situs of the facts giving rise to the litigation. One must consider: Are the parties Indian or non-Indian? Does the Indian Child Welfare Act apply? Two authors, Davis H. Getches and Charles F. Wilkinson, in their treatise, *Federal Indian Law* (2d ed. 1986), write that the jurisdictional maze in criminal cases can be "walked with some confidence" when an analytical approach is followed. *Supra,* at 412. Briefly, their analysis contains these steps:

1. Was the locus of the crime in Indian Country?
2. Does Public Law 280 or a specific jurisdictional statute apply? Here, Public Law 280 is governing.
3. Was the crime committed by or against an Indian?
4. Which Defendant–Victim category applies? This question includes "victimless" and "consensual" crimes.

*See Federal Indian Law, supra,* at 412–15.

This point I try to make: Jurisdiction depends upon many factors. History of the particular reservation involved,* as well as legislative enactments of the particular state, likewise play a vital role. Each case must be scrutinized to determine where jurisdiction lies. Indian jurisdiction is a complex subject and is not ordinarily amenable to black and white solutions. There are many areas of gray in this kind of litigation. Overlaying all of the above is the shifting sand of federal policy which spawns further complicated and knotty difficulties and entanglements. One law review article has characterized Indian policy as having "vacillated between assimilation, annihilation, and self-determination." Note, *Recognition of Tribal Decisions in State Courts,* 37 Stan.L.Rev. 1397, 1399 (1985).

Here, I join the majority opinion based upon *Washington v. Yakima Indian Nation,* and the legal position of South Dakota, which is that it has assumed limited jurisdiction in this particular area of Indian jurisdiction. Article XXII of the South Dakota Constitution, entitled "Compact with the United States," provides, *inter alia,* that "Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States...." Congress, through Public Law 280, and South Dakota, through the state legislature's "highway" provision in SDCL 1–1–21, have combined to rewrite this compact. SDCL 1–1–21, when read in reference to SDCL 1–1–18, gives the state civil and criminal jurisdiction over incidents on public highways on Indian land. While the state can only protect its interests "up to the point where tribal self-government would be affected," (*McClanahan v. State Tax Comm'n of Arizona,* 411 U.S. 164, 179, 93 S.Ct. 1257, 1266, 36 L.Ed.2d 129, 140 (1973)), state assumption of jurisdiction, when in compliance with Public Law 280, is proper. *Bryan v. Itasca County,* 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976).

---

* South Dakota has nine Indian Reservations, and each has an active tribal court. Seven have tribal courts which originate in a tribal sovereignty predating the United States Constitution. Two tribal courts are derived from the federally created Courts of Indian Offenses. These tribal courts are all subject to Congressional authority. *See generally* F. Pommersheim, *South Dakota Tribal Court Handbook* (March 1988). The Sisseton-Wahpeton Sioux Reservation, formerly the Lake Traverse Indian Reservation, was technically terminated as a "reservation" in 1891, but retains some attributes of reservation status. *See DeCoteau v. District County Court,* 420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975).