UNITED STATES of America, Plaintiff,

v.

Silas Cedric HIGH ELK, Jr., Defendant.

No. CR89–30015–01.

United States District Court, D. South Dakota, C.D.

July 7, 1989.

Robert Mandel, Asst. U.S. Atty., Rapid City, S.D., for plaintiff.

Rodney Lefholz, Rapid City, S.D., for defendant.

## MEMORANDUM OPINION AND ORDER

BATTEY, District Judge.

### NATURE AND PROCEDURAL HISTORY

Defendant was indicted on March 29, 1989, under the Major Crimes Act, 18 U.S.C. § 1153[1] for the offense of involun-

---

1. § 1153. Offenses committed within Indian country

(a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A [sexual abuse, including aggravated sexual abuse, sexual abuse, sexual abuse of minor or ward, and abusive sexual contact], incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and a felony under section 661 of this title [larceny within special maritime and territorial jurisdiction] within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

tary manslaughter. The indictment specifically charges that on or about the 28th day of February, 1989, on Highway 63, approximately 14 miles north of Eagle Butte, in the District of South Dakota, in Indian country, Silas Cedric High Elk, Jr., an Indian, unlawfully killed a human being, Gladys M. LeBeau, without malice, in the commission of a lawful act in an unlawful manner which might produce death. Such act was committed in a grossly negligent manner, with actual knowledge that his conduct was a threat to the lives of others or with actual knowledge that would reasonably enable him to foresee the peril to which his act might subject another, to-wit: defendant did unlawfully kill Gladys M. LeBeau by operating the motor vehicle in a grossly negligent manner and did thereby commit the crime of involuntary manslaughter, in violation of 18 U.S.C. §§ 1153 and 1112. The facts are undisputed that the offense occurred on South Dakota Highway 63 located 0.5 miles south of milepost 188 in Indian country. The offense is defined in 18 U.S.C. § 1112.[2]

On May 18, 1989, defendant, through his attorney, filed a motion to dismiss the indictment for the reason that the Court lacks jurisdiction to prosecute this matter under 18 U.S.C. § 1153 in that the alleged crime described in the indictment did not occur within Indian country, within the jurisdiction of the United States. Defendant's argument is a jurisdictional one in which he attempts to extend *Rosebud Sioux Tribe v. State of South Dakota,* 709 F.Supp. 1502 (D.S.D.1989), to this case.

The issue is whether or not the United States continues to have jurisdiction over crimes as defined in the Major Crimes Act (Act) committed by Indians on highways within the reservation.

For the reasons set forth herein, the Court finds that the United States continues to possess jurisdiction under the Act and accordingly the motion of defendant to dismiss for lack of jurisdiction is denied.

This Court holds that such jurisdiction does exist. Until the issue of state jurisdiction is finally resolved by the appeal of *Rosebud Sioux Tribe,* the federal jurisdiction under 18 U.S.C. § 1153 is at the least concurrent with the state over highways within Indian country.

## ROSEBUD SIOUX TRIBE V. STATE OF SOUTH DAKOTA, 709 F. SUPP. 1502 (D.S.D.1989)

In *Rosebud Sioux Tribe,* Chief Judge Donald J. Porter reviewed the historical development of South Dakota jurisdiction over Indians in general and specifically traced the history of the organic law disclaimer as found in Section 4 of the Enabling Act of February 22, 1889, ch. 180, § 4; 25 Stat. 676, Public Law 280, passed in 1953, codified in part at 18 U.S.C. § 1162 and 28 U.S.C. § 1360; and the South Dakota statutory and judicial decisions relating to the subject of Indian jurisdiction. Judge Porter concluded that pursuant to the 1953 version of Public Law 280 and the state legislation enacted in 1961, South Dakota validly assumed civil and criminal jurisdiction concurrent with the tribes over Indians on Indian country highways.

In *Rosebud Sioux Tribe,* the tribes asserted that with regard to offenses committed by Indians on roads within the reservation, the United States has exclusive jurisdiction over major crimes and the tribes have exclusive jurisdiction over other crimes. Defendant South Dakota asserted a right to enforce the laws of South Dakota on all individuals on highways within the reservations. *Id.* at 1503. Judge Porter did not address federal jurisdiction under the Major Crimes Act. The determination of those issues was not required in order to dispose of the case. In short, *Rosebud Sioux Tribe* involved an issue of state jurisdiction, whereas this case involves an issue of federal jurisdiction. *Rosebud Sioux*

---

**2.** § 1112. Manslaughter

(a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

Voluntary—Upon a sudden quarrel or heat of passion.

Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

*Tribe* does not imply the exclusiveness of state jurisdiction.

## DISCUSSION

No useful purpose would be served by a specific recitation of the history of Indian jurisdiction, legislation, both federal and state, and the decisions interpreting the same. The South Dakota law is reflected in the case of *In re Petition of High Pine*, 78 S.D. 121, 99 N.W.2d 38 (1959); *In re Petition of Hankins*, 80 S.D. 435, 125 N.W. 2d 839 (1964); and *State v. Onihan*, 427 N.W.2d 365 (S.D.1988). Judicial decisions and treatises abound concerning Indian jurisdiction. *See Washington v. Yakima Indian Nation*, 439 U.S. 463, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979); *Bryan v. Itasca County, Minnesota*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976); *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g, P.C.*, 467 U.S. 138, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984); *Anderson v. Gladden*, 188 F.Supp. 666, 678–79 (D.Or. 1960), *aff'd*, 293 F.2d 463 (9th Cir.), *cert. denied*, 368 U.S. 949, 82 S.Ct. 390, 7 L.Ed. 2d 344 (1961); *St. Cloud v. United States*, 702 F.Supp. 1456 (D.S.D.1988); and F. Cohen, *Handbook of Federal Indian Law*, 362–71 (1982 ed.). All reflect in varying nature the vagaries of this Indian jurisdiction problem.

Defendant points to no case authority—and the Court has found none—holding that federal courts lack jurisdiction of major crimes committed by Indians against Indians occurring upon highways running through Indian country in those states that have assumed jurisdiction under Public Law 280. One must resort to interpretation by implication to so hold. This Court refuses to do so.

The Court is not unmindful that Public Law 280, section 2(a), mandated that all civil and criminal jurisdiction (with certain geographic exceptions) transferred to the five named states of California, Minnesota, Nebraska, Oregon, and Wisconsin. In the transfer of jurisdiction, section 2(c) provided as follows: "(c) The provisions of sections 1152 [federal enclave laws] and 1153 [Major Crimes Act] do not apply to areas listed in subdivision (a) [the named states of this section]." Sections 6 and 7 of the Act further provided the option to other states to assume civil and criminal jurisdiction as provided by the Act. In examining Public Law 280, the Court is unable to make a leap in logic which would permit the Court to conclude that since Congress intended that the Major Crimes Act should not apply in those states specifically listed (mandatory states), that it must of necessity also have intended that it should not apply as to those states who later assume jurisdiction pursuant to sections 6 and 7 (option states).

The Major Crimes Act was passed as a direct result of the decision in *Ex Parte Crow Dog*, 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883) in which the Supreme Court of the United States held that the murder of the popular Indian Chief Spotted Tail by defendant Crow Dog committed in Indian country was not a violation of federal law and therefore, the federal court lacked jurisdiction to try Cross Dog. *See Keeble v. United States*, 412 U.S. 205, 208–12, 93 S.Ct. 1993, 1996–97, 36 L.Ed.2d 844 (1973). The Act has been an integral part of federal criminal jurisdiction in Indian country for over a century. Such a policy of long standing is not to be discarded absent a clear legislative mandate.

## CONCLUSION

This Court concludes that the federal government continues jurisdiction under the crimes enumerated in 18 U.S.C. § 1153 upon all Indian land, including highways. The legislative history of Public Law 280,[3] the evolution of the case law, and rules of construction requiring ambiguous legislative enactment to be interpreted in favor of Indians, do not convince the Court otherwise.

## ORDER

For all the reasons set forth above, it is hereby

---

3. 1953 U.S.Code Cong. & Admin.News 2409–14.

ORDERED that defendant's motion to dismiss for lack of jurisdiction is denied.